UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROBERT EARNEST GOLDSBERRY,

Plaintiff,

v.

DAVID LONG, Warden,

Defendant.

No.  2:13-cv-01358 AC

ORDER

Petitioner is a California state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The action proceeds on the petition filed July 5, 2013, ECF No. 1, which challenges petitioner's 2010 domestic violence conviction.  Respondent has answered, ECF No. 16, and petitioner has filed a traverse, ECF No. 20.  The parties have consented to the jurisdiction of the magistrate judge.  ECF Nos. 7, 11.

BACKGROUND

I.      Proceedings In the Trial Court

A.  Preliminary Proceedings

Petitioner was charged in San Joaquin County Superior Court with offenses arising from an altercation with his girlfriend, Pamela Marsh.  The information charged petitioner with one count of inflicting corporal injury on a spouse or cohabitant in violation of Cal. Penal Code § 273.5.  The information also alleged that petitioner had inflicted great bodily harm on the victim,

1

1   and had personally used a deadly weapon (scissors).  A prior strike and a prior prison term were

2   also alleged.  The information provided notice that the prosecution would seek to admit evidence

3   of prior domestic violence committed by petitioner, pursuant to Cal. Evid. Code § 1109.  CT 8-

4   11.[1]

5          The defense moved in limine to exclude evidence of other domestic violence, CT 43-45,

6   and the prosecution moved to admit evidence of certain specific incidents, CT 54.  As detailed

7   below regarding petitioner's Claim Three, the court ruled that some of the evidence was

8   admissible and some was not.  Certain evidence was to be admitted only if appellant testified and

9   denied the prior offenses.

10         B.  The Evidence Presented At Trial

11             1.  Prosecution Case

12         The following facts were established by the evidence presented at trial.  Petitioner and

13  Pamela Marsh began dating in November 2009 and starting living together immediately.  On the

14  night before the alleged assault, the two argued about money.  Petitioner grabbed Marsh by the

15  arms, and they wrestled.  Marsh told petitioner to leave, and they quarreled over items of hers that

16  were in his truck.  He put his hands on her again, and she hit him in the mouth.  After petitioner

17  finally left, Marsh called him because he had hidden her cell phone and purse earlier in the day

18  and she wanted them back.

19         On the morning of March 28, 2010, petitioner and Marsh went to the flea market in

20  Stockton together as previously planned, to sell some of their belongings.  Marsh intended to part

21  from petitioner permanently as soon as the items were sold.  When they got to the flea market,

22  Marsh took "a little bit" of methamphetamine.  Petitioner helped Marsh set up their stall, then left

23  her alone to sell their belongings.  When he returned later in the day, he demanded the money

24  from the sales.  Petitioner surreptitiously took Marsh's purse and wrapped it in a tarp.  When

25  Marsh demanded it back, he threw it on the ground.  Marsh bent to pick it up, and as she stood up

26  again petitioner stabbed her on her forearm and her hand.  Marsh started bleeding badly, and her

27

28  [1]  "CT" refers to the Clerk's Transcript on Appeal.

1  arm and hand felt numb.  Marsh told a concession stand worker she had been stabbed, and asked

2  to borrow her phone.  The concession stand worker gave her the phone, and Marsh called 911.

3        The concession stand worker testified that she did not see the altercation, but that Marsh

4  was bleeding and said that she had been stabbed.

5        Marsh was taken by ambulance to the emergency room, where she was treated for two

6  lacerations.  One was to the forearm; it was deep and "flap-like," and required stitches.  The

7  wound to the hand was more superficial, but bled a lot.

8        Marsh was initially unable to identify the object with which she had been stabbed.

9  Investigating officers saw a trail of fresh blood at the scene.  A pair of scissors was also found,

10  and tested positive for the presence of blood.  Marsh identified the scissors as those she had used

11  at the stall.

12        Petitioner's former wife, Daisy, testified that petitioner had head-butted her in April of

13  2004 during an argument about money.  Daisy sustained injuries to her lip and forehead.

14  Petitioner pled no contest to misdemeanor battery in that case.  In September of 2005, while a

15  restraining order was still in effect, petitioner had called Daisy several times during one night and

16  said "the bogeyman is here" and "I'm gonna get you."

17        2.  Defense Case

18        Petitioner testified in his own defense as follows.  His relationship with Marsh had been

19  tumultuous due to her drug use.  On March 27, 2010, Marsh had been awake for days and was

20  being "mean as hell."  Although petitioner had given her money for food, there was no food in the

21  house and Marsh's purse contained drug paraphernalia instead of cash.  Petitioner decided to end

22  the relationship.  Marsh begged him to stay.  That night when they argued, Marsh smashed the

23  light bulbs on the roof of petitioner's truck and tried to take his property out of the truck bed.  He

24  did not shove her, but merely raised his arm to prevent her from taking his things.  Marsh

25  punched him twice in the face.  After petitioner left, Marsh called him and threatened him.

26        On the morning of March 28 petitioner and Marsh went to the flea market as previously

27  planned, without incident.  Petitioner helped Marsh set up their stall, then left.  When he returned

28  in the afternoon, Marsh was sitting with a woman he did not recognize.  He could tell they were

both high.  Marsh told petitioner they had made $70 or $80, but he could tell from examination of the unsold items that she must have collected $1200.  Marsh refused to show him the cash, and they argued.  Petitioner began loading his belongings, but not Marsh's items, into his trailer.  Marsh became belligerent and petitioner backed away from her.

Marsh and petitioner were using a pair of scissors to take down the tarp that was fastened to their stall with twine.  As they took down the stall, petitioner noticed Marsh's purse on a shelf.  He believed that she had put his cell phone in her purse.  Petitioner hid the purse in the tarp that he was handling, to give himself the opportunity to retrieve his phone without Marsh noticing.  When Marsh caught him with the purse, she hit him.  She came at petitioner with the scissors, and must have cut herself.[2]

Petitioner acknowledged pleading guilty in 1993 to a battery against his ex-wife, Catherine.  He had pled guilty in 2004 to a battery against Daisy, but regretted the plea.  He dated a woman named Lavinia between 2005 and 2007, and was convicted of making criminal threats against her although he was not guilty.  In 2007 petitioner was convicted of felony vandalism, and was on parole for that conviction at the time of his arrest and at the time of his trial.

A former employer of petitioner's testified that he believed petitioner was honest and trustworthy.

C.  Outcome

On November 5, 2010, the jury found petitioner guilty of infliction of corporal injury on a spouse or cohabitant (Cal. Penal Code § 273.5) and found true the allegations that Petitioner had inflicted great bodily harm on the victim (Cal. Penal Code § 12022.7(e)) and had personally used a deadly weapon, to wit, scissors (Cal. Penal Code § 12022(b)(1)).  1 CT 84.  Petitioner waived his right to a jury trial on the allegation of his prior convictions, id., and the trial court found true that petitioner had a prior conviction for a serious felony and a strike, for which he had served a

---

[2] ". . . [S]he had the scissors in her hand.  And she was coming at me and trying to grab that tarp with them – the purse on it.  And I lifted it up and she was grabbing towards it.  That's – I didn't see her do it, but that's the only thing I can think of how she injured herself is when she was grabbing for the purse and tarp. . . ."  RT 381.

1  prison term.  1 CT 220.

2      On August 1, 2011, the court sentenced petitioner to 20 years in prison.  1 CT 296.

3  II.      Post-Conviction Proceedings

4      Petitioner filed a notice of appeal on August 2, 2011.  CT 295.  The California Court of

5  Appeal affirmed the judgment of conviction on May 11, 2012.  Lodged Doc. 3.  The California

6  Supreme Court denied review on July 18, 2010.  Lodged Doc. 5.

7      Petitioner filed a petition for writ of habeas corpus in the Superior Court of San Joaquin

8  County on January 14, 2013.  Lodged Doc. 6.  On February 27, 2013, the court issued a written

9  ruling denying the petition.  Lodged Doc. 7.  Petitioner then filed a habeas petition in the

10  California Court of Appeal, which was denied on April 15, 2013.  Lodged Doc. 9.  Petitioner then

11  filed a habeas petition in the California Supreme Court, which was denied on June 19, 2013.

12  Lodged Doc. 12.

13      By operation of the prison mailbox rule, the instant federal petition was filed on July 5,

14  2013.[3]  ECF No. 1.  Respondent answered on November 22, 2013.  ECF No. 16.  Petitioner's

15  traverse was docketed on December 26, 2013.  ECF No. 20.

16          STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

17      28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of

18  1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a state court shall not be
> granted with respect to any claim that was adjudicated on the merits
> in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

26      The statute applies whenever the state court has denied a federal claim on its merits,

---

[3]  See Houston v. Lack, 487 U.S. 266 (1988) (establishing rule that a prisoner's court document is deemed filed on the date the prisoner delivered the document to prison officials for mailing).

1   whether or not the state court explained its reasons.  Harrington v. Richter, 131 S. Ct. 770, 785

2   (2011).  State court rejection of a federal claim will be presumed to have been on the merits

3   absent any indication or state-law procedural principles to the contrary.  Id. at 784-785 (citing

4   Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is

5   unclear whether a decision appearing to rest on federal grounds was decided on another basis)).

6   "The presumption may be overcome when there is reason to think some other explanation for the

7   state court's decision is more likely."  Id. at 785.

8        The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal

9   principle or principles" previously articulated by the Supreme Court.  Lockyer v. Andrade, 538

10  U.S. 63, 71-72 (2003).  Only Supreme Court precedent may constitute "clearly established

11  Federal law," but circuit law has persuasive value regarding what law is "clearly established" and

12  what constitutes "unreasonable application" of that law.  Duchaime v. Ducharme, 200 F.3d 597,

13  600 (9th Cir. 2000); Robinson v. Ignacio, 360 F.3d 1044, 1057 (9th Cir. 2004).

14       A state court decision is "contrary to" clearly established federal law if the decision

15  "contradicts the governing law set forth in [the Supreme Court's] cases."  Williams v. Taylor, 529

16  U.S. 362, 405 (2000).  A state court decision "unreasonably applies" federal law "if the state

17  court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to

18  the facts of the particular state prisoner's case."  Id. at 407-08.  It is not enough that the state court

19  was incorrect in the view of the federal habeas court; the state court decision must be objectively

20  unreasonable.  Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

21       Review under § 2254(d) is limited to the record that was before the state court.  Cullen v.

22  Pinholster, 131 S. Ct. 1388, 1398 (2011).  The question at this stage is whether the state court

23  reasonably applied clearly established federal law to the facts before it.  Id.  In other words, the

24  focus of the § 2254(d) inquiry is "on what a state court knew and did."  Id. at 1399.  Where the

25  state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is confined to "the

26  state court's actual reasoning" and "actual analysis."  Frantz v. Hazey, 533 F.3d 724, 738 (9th

27  Cir. 2008) (en banc).  A different rule applies where the state court rejects claims summarily,

28  without a reasoned opinion.  In Richter, supra, the Supreme Court held that when a state court

1     denies a claim on the merits but without a reasoned opinion, the federal habeas court must

2     determine what arguments or theories may have supported the state court's decision, and subject

3     those arguments or theories to § 2254(d) scrutiny. Richter, 131 S. Ct. at 786.

DISCUSSION

I.     Claim One: Due Process

A.     Petitioner's Allegations

Petitioner contends that the trial court violated due process in numerous ways, as follows.

1.     Speedy Trial Violation

First, "[o]n Petitioner's 60th day of trial, the trial court said that it found good cause to continue petitioner's trial date past the statutory time allowed without stating on the record what the cause was, nor was petitioner allowed his State and Federal Due Process Right to object or waive his speedy trial rights." ECF No. 1 at 4. Petitioner's Exhibit 1, id. at 25-32, provides the basis for this claim.

On October 27, 2010, the day jury selection began, defense counsel moved to dismiss on grounds the trial had been continued past the sixtieth day without a waiver of time. On October 15, just before the time expired, the case had come on before a different judge and been continued for good cause. Defense counsel disputed the accuracy of the minute order for October 8, which indicated that the trial had been "continued [to October 15] at defense request." Nonetheless, the trial judge found that the judge presiding on October 15 had made a finding of good cause for the continuance, and he denied the motion. Id. at 26-28.

2.     Denial of Transcripts

Second, the trial court refused to provide petitioner copies of transcripts.[4] ECF No. 1 at 5. Petitioner attaches his post-conviction motion and correspondence with the trial court, in which he sought copies of transcripts and case files. Id. at 32-41.

////

---

[4] To the extent that petitioner is asking this court to take judicial notice of the trial court record in adjudicating his petition, ECF No. 1 at 5, the request is unnecessary. This court's review under 28 U.S.C. § 2254 always proceeds on the basis of the complete trial court record, which respondent has lodged and the undersigned has reviewed.

7

1          3.  Defense Conflict of Interest

2          Third, petitioner informed the trial court that the public defender had a conflict of interest

3   because it represented the "supposed victim."  ECF No. 1 at 5.  Petitioner's exhibits establish the

4   following:

5          On October 26, 2010, during motions in limine, the parties discussed a warrant that had

6   previously issued for Ms. Marsh regarding her failure to appear in another case.  During

7   discussion of the matter, the prosecutor noted that the Public Defender's Office, which was

8   representing petitioner, also appeared to be representing Ms. Marsh in her unrelated case.  Id. at

9   47-52.  Defense counsel stated, "I don't know.  But we'll have to look at that.  We can't do that,

10  obviously." Id. at 50.

11          4.  Failure to Accommodate Petitioner's Hearing Impairment

12         Fourth, the trial court failed to accommodate petitioner's hearing impairment.  ECF No. 1

13  at 5.  Petitioner provides an excerpt of a Faretta hearing transcript,[5] in which he mentioned his

14  hearing impairment and the judge acknowledged that "there have been times when you've asked

15  us to speak up to make sure that you hear everything."  Id. at 77-78.  Petitioner also provides

16  documentation of his hearing loss and the fact that he wears hearing aids.  Id. at 79-92.  The

17  medical records comprising petitioner' Exhibit 4 post-date the trial (all are from 2012), but do

18  reference "a long history of ear disease" including a 1995 eardrum perforation and surgery "many

19  years ago." Id. at 79, 82, 83.

20          5.  Admission of Improper Evidence

21         In what he denominates "points" five through eight of his due process claim, petitioner

22  alleges that he was denied due process and a fair trial by the admission of uncorroborated and

23  unreliable evidence to prove that he had stabbed the victim with a pair of scissors.  Petitioner

24  contends first that his due process rights were violated by witness testimony, unsupported by

25  scientific proof, that a drop of blood on the scissors belonged to the victim.  The prosecutor was

26  also permitted to present the testimony of the victim that petitioner had stabbed her with scissors,

27

28  [5]  Faretta v. California, 422 U.S. 806 (1975).

1    when there was no scientific evidence supporting the testimony.  Moreover, the trial court

2    improperly admitted the scissors into evidence.  "The problem with the people's case in chief is

3    that the supposed victim was under the influence of 'Meth' a drug known to cause hallucination,

4    and also causing those under its influence to harm themselves."  The trial court also failed to find

5    defense counsel ineffective for failing to address these issues.  ECF No. 1 at 5-6.

6            Petitioner's exhibits establish that defense counsel objected in limine to admission of

7    evidence that the scissors had tested presumptively positive for the presence of blood.  Counsel

8    objected on <u>Kelly</u>/<u>Frye</u>[6] grounds to the presumptive blood test results.  <u>Id.</u> at 56.  Following a

9    hearing pursuant to Cal. Evid. Code § 402, the trial judge ruled that the evidence could come in

10   subject to cross-examination regarding the test's ability to distinguish between human and animal

11   blood.  <u>Id.</u> at 63-64.  When the crime scene technician testified, she stated that she had not

12   attempted to get fingerprints from the scissors and that the blood on the scissors was not tested for

13   DNA.  <u>Id.</u> at 69-70.  She had photographed petitioner, and did not observe any blood on his

14   person, clothing, or shoes.  <u>Id.</u> at 71.  Petitioner's post-conviction motion for DNA testing was

15   denied.  <u>Id.</u> at 72-73.

16                        6.   <u>Failure to Declare Counsel Ineffective</u>

17           In "Point 9" of his due process claim, petitioner holds the trial judge responsible for

18   permitting defense counsel to render deficient performance related to the previously alleged

19   matters.  The merits of this claim stand or fall with petitioner's ineffective assistance of counsel

20   claim, Claim Two, which is discussed separately below.

21                        B.   <u>Procedural Default</u>

22           This claim (or set of claims) was presented to the state courts in a petition for writ of

23   habeas corpus.  The San Joaquin County Superior Court denied relief in a reasoned opinion,

24   which first found that these issues could have been, but were not, raised on appeal:

25                    Although somewhat confusing in identifying issues, as well as
                      presentation of evidence and argument, in the present petition
26                    Petitioner claims a number of alleged rights violations which were
                      not raised in his direct appeal. . . .
27

28   _____
     [6]  <u>People v. Kelly</u>, 17 Cal. 3d 24 (1976); <u>Frye v. United States</u>, 293 F.1013 (D.C. Cir. 1923).

1

2

3

4

5

6

> [H]abeas corpus cannot serve as a substitute for an appeal, and, in the absence of special circumstances constituting an excuse for failure to employ that remedy, the writ will not lie where the claimed errors could have been, but were not, raised upon a timely appeal from a judgment of conviction." (<u>People v. Richardson</u> (2008) 43 Cal. 4th 959, 1038, citing <u>In re Dixon</u> (1953) 41 Cal. 2d 756, 759.) In addition, contentions that could not be raised on appeal because of a failure to raise them in the trial court cannot be considered in a habeas corpus proceeding. (<u>In re Seaton</u> (2004) 34 Cal. 4th 193, 199.)

7

8

Lodged Doc. 7 at 1-2. The court then proceeded to address the merits of the claims, finding that none of petitioner's allegations stated a prima facie claim for relief. <u>Id.</u> at 2-3.

9

10

11

12

13

14

15

16

Respondent contends that petitioner is procedurally barred from pursuing these claims in federal court. ECF No. 16 at 19-21. As a general rule, a federal habeas court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." <u>Calderon v. United States District Court (Bean)</u>, 96 F.3d 1126, 1129 (9th Cir.1996) (citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 729 (1991)); <u>cert. denied</u>, 520 U.S. 1204 (1997). The fact that the state court alternatively ruled on the merits does not erase the effect of a procedural bar. <u>Harris v. Reed</u>, 489 U.S. 255, 264 n. 10 (1989).

17

18

19

20

21

22

23

24

25

26

27

A petitioner can overcome a procedural default by demonstrating cause and prejudice. <u>Coleman v. Thompson</u>, 501 U.S. 722, 753 (1991). Ineffective assistance of counsel can, if pleaded and proved, establish cause for a default. <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986); <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451 (2000). Here, petitioner's Claim Two includes the allegations that trial counsel was ineffective in failing to properly litigate and preserve various issues presented in Claim One, and that appellate counsel was ineffective in failing to present them on appeal. The cause and prejudice inquiry applicable to Claim One thus overlaps with the merits of Claim Two. This is so because in both the default and merits contexts, petitioner must establish prejudice from counsel's performance, which in turn requires analysis of the strength of the claims that counsel failed to present. <u>See</u> <u>Moorman v. Ryan,</u> 628 F.3d 1102, 1106-07 (9th Cir. 2010), <u>cert. denied</u>, 132 S.Ct. 346 (2011).

28

////

1    Apart from the cause and prejudice inquiry, application of the default doctrine requires

2    evaluation of the "adequacy" of the state rule invoked to bar relief in state court.  To be deemed

3    adequate, the rule must be well established and consistently applied at the time of the purported

4    default.  Walker v. Martin, 131 S.Ct. 1120, 1128 (2011).  Adequacy is analyzed pursuant to the

5    burden-shifting framework established by Bennett v. Mueller, 322 F.3d 573 (9th Cir. 2003),

6    which can require consideration of empirical data regarding the state courts' history of application

7    of the rule at issue.  Here, the pro se petitioner has not addressed adequacy or otherwise

8    responded to the procedural default argument.

9    A federal court may bypass consideration of a procedural bar issue in the interests of

10   judicial economy, where the asserted default presents complicated questions and the other issues

11   are resolvable against the petitioner.  Lambrix v. Singletary, 520 U.S. 518, 522−25 (1997);

12   Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002).  Here, because the merits of the

13   defaulted issues must be evaluated in any case, and because the court is disinclined to adjudicate

14   adequacy in the absence of responsive briefing, the undersigned exercises discretion to bypass the

15   procedural default issue and proceed to the merits.

16        C.   The Clearly Established Federal Law

17             1.   Due process generally

18   "As applied to a criminal trial, denial of due process is the failure to observe that

19   fundamental fairness essential to the very concept of justice.  In order to declare a denial of it we

20   must find that the absence of that fairness fatally infected the trial; the acts complained of must be

21   of such quality as necessarily prevents a fair trial."  Lisenba v. California, 314 U.S. 219, 236

22   (1991) (holding that admission of coerced confession violates due process).  The United States

23   Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very

24   narrowly."  Dowling v. United States, 493 U.S. 342, 352 (1990).

25             2.   Speedy trial

26   Criminal defendants have "the right to a speedy and public trial."  U.S. Const., amend. VI;

27   see also Doggett v. United States, 505 U.S. 647, 651 (1992).  The determination of whether a

28   defendant's right to a speedy trial was violated is a fact-based inquiry that requires balancing

various factors of the case, including: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant.  Barker v. Wingo, 407 U.S. 514, 530 (1972).  The length of delay serves as a "triggering mechanism," and if there is not a delay which is presumptively prejudicial, then there is no reason to consider the other balancing factors. Id.

### 3.   Right to transcripts

An indigent defendant must be provided with a transcript of prior proceedings when that transcript is needed for an effective defense or appeal.  Britt v. North Carolina, 404 U.S. 226, 227 (1971) (transcript of prior trial that ended in mistrial); Griffin v. Illinois, 351 U.S. 12, 17-20 (1956) (transcript needed for appeal).  The two factors relevant to determining whether a given transcript is necessary for an adequate defense are "(1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a transcript."  Britt, 404 U.S. at 227.

### 4.   Right to conflict-free counsel

The Sixth Amendment right to effective assistance of counsel carries with it "a correlative right to representation that is free from conflicts of interest."  Wood v. Georgia, 450 U.S. 261, 271 (1981).  Accordingly, a trial court may not require over objection that one lawyer simultaneously represent co-defendants with actually conflicting interests.  Holloway v. Arkansas, 435 U.S. 475 (1978).   In such cases, prejudice is presumed and reversal is required. Id. at 488-90.  Where there is no objection to joint representation, a different rule applies.  In order to establish a Sixth Amendment violation, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. Cuyler v. Sullivan, 446 U.S. 335, 348 (1980).  "Actual conflict of interest" means a conflict that actually affects counsel's performance, rather than a "mere theoretical division of loyalties." Mickens v. Taylor, 535 U.S. 162, 171 (2002).

### 5.   Accommodation of hearing impairment

The constitutional guarantee of due process in a criminal trial "is, in essence, the right to a fair opportunity to defend against the State's accusations."  Chambers v. Mississippi, 410 U.S.

284, 294 (1973).  That guarantee encompasses both the right of a defendant to confront witnesses against him and his right to assist in his own defense.  Chambers, 410 U.S. at 295; Pointer v. Texas, 380 U.S. 400, 405 (1965).  Although the Ninth Circuit has held that these principles give rise to a constitutional right to an interpreter where lack of English fluency interferes with the right to confrontation or the ability to understand or respond to questions, United States v. Lim, 794 F.2d 469, 470 (9th Cir. 1984), cert. denied, 479 U.S. 937 (1986), the U.S. Supreme Court has not addressed application of Chambers and Pointer in the specific contexts of language fluency or hearing impairment.

### 6.  Due process limitations on the admission of evidence

The admission of evidence is generally a matter of state law, and habeas relief does not lie for errors of state law.  Estelle v. McGuire, 502 U.S. 62, 67 (1991).  The erroneous admission of evidence violates due process, and supports habeas relief, only when it results in the denial of a fundamentally fair trial.  Id. at 72.  The Supreme Court has rejected the argument that due process necessarily requires the exclusion of prejudicial evidence.  Spencer v. Texas, 385 U.S. 554, 563-564 (1967).

### D.  The State Court's Ruling

The San Joaquin County Superior Court denied petitioner's due process claims in the only reasoned state court opinion addressing their merits, so that is the decision reviewed for reasonableness under § 2254(d).  See Ylst v. Nunnemaker, 501 U.S. 797 (1991); Bonner v. Carey, 425 F.3d 1145, 1148 n.13 (9th Cir. 2005).  The superior court ruled in relevant part as follows:

> Speedy Trial
>
> In the section of his petition regarding his claimed speedy trial violation, Petitioner has included several transcript excerpts with yellow highlighted lines, a post-trial/post-appeal handwritten letter from himself to the trial judge, a notice of motion for the production of transcripts and case-related materials, a "Memorandum of Points and Authorities," an incomplete and unsigned order for attorney's case file, a proof of service, a signed order from the trial court denying Petitioner's request for copies, a post trial/post appeal letter from Petitioner to trial counsel, a second post trial/post appeal letter from Petitioner to the trial judge, [and] copies of minute orders (8/16/10, 10/08/10, 10/15/10, and 10/22/10).
>
> Petitioner's Memorandum of Points and Authorities is difficult to

understand as relating to any claim of a speedy trial violation. It addresses general state bar rules of professional conduct, rules of civil procedure regarding discovery and depositions, court reporter's and clerk's duties, fee waiver eligibility, and motions for court orders of prior proceedings. While the submitted transcript excerpts do show that trial counsel made a motion to dismiss based on a speedy trial motion, they also reveal that the trial court denied the motion based on another judge's prior finding of good cause for continuing the matter. Petitioner presents no coherent legal theory setting forth the statutory speedy trial requirements or how he claims the court's ruling violated his rights. "To warrant the issuance of an order to show cause, defendant bears the burden of stating a prima facie case for habeas relief." (People v. Witcraft (2011) 201 Cal.App.4th 659, 665.) It is not the burden of this court to sift through documents and try to piece together a coherent theory that supports Petitioner's conclusory allegations. Petitioner's claim of speedy trial violation is not supported by a prima facie showing sufficient to grant the relief requested.

Conflict of Interest

Again, Petitioner submits, transcript excerpts, but sets forth no coherent legal theory to support his position. This claim is also not supported by a prima facie showing entitling Petitioner to relief.

Hearing Impairment

Petitioner fails to submit any evidence to establish that he has a hearing impairment, that he made this known to the trial court, and that he was denied any accommodation leading to prejudice. Again, he also sets forth no coherent legal theory to support his claim.

Human Blood Evidence

Petitioner has submitted transcript excerpts with highlighting and some handwritten comments, but he has not set forth any coherent legal argument that sets forth a prima facie case of trial court error.

Testimony of Stabbing

In claiming that the trial court allowed testimony of stabbing without "factual support," it is not clear what Petitioner is specifically arguing. He has not set forth a prima facie case that the trial court erred in admitting evidence that he stabbed the victim. Furthermore, the statement of decision in Petitioner's direct appeal reveals that the Appellate Court considered and rejected a claim of ineffective assistance of counsel for conducting cross-examination of a witness that resulted in her testifying that the victim said her boyfriend had stabbed her. (3rd District Court of Appeal, case no. C068972, p. 6.)

. . .

Petitioner has failed to meet his burden in seeking habeas corpus relief by failing to establish a prima facie case as to any of his

> numerous claims. While he has obtained some documents related to his case and somewhat related to his crimes, his burden involves more than submitting documents. He must set forth coherent legal theories, supported by relevant evidence, that establish his claims for relief. This he has failed to do.

Lodged Doc. 7 at 2-3.

### E.   Objective Reasonableness Under § 2254(d)

Where, as here, the state court rejects habeas claims for lack of a prima facie case, the absence of a prima facie case is the determination subject to review in this court under 28 U.S.C. § 2254(d).  Nunes v. Mueller, 350 F.3d 1045, 1054-55 (9th Cir. 2003), cert. denied, 543 U.S. 1038 (2004).

### 1.   Speedy Trial Violation

It was not unreasonable of the superior court to deny petitioner's speedy trial claim for lack of a prima facie case.  Petitioner did not allege a length of delay that is presumptively prejudicial under clearly established Supreme Court precedent.  The delay here appears to have been approximately a week and a half.[7]  In Doggett, supra, the Supreme Court noted that lower courts have generally attached a presumption of prejudice, sufficient to trigger inquiry under Barker v. Wingo, when the delay "approaches one year."  505 U.S. at 652, n.1.  The Ninth Circuit has found a six-month delay sufficient to trigger an analysis of the other three Barker factors.  See United States v. Valentine, 783 F.2d 1413, 1417 (9th Cir. 1986); United States v. Simmons, 536 F.2d 827, 831 (9th Cir. 1976).  The brief delay of petitioner's trial does not come close to generating a presumption of prejudice.  Accordingly, the other Barker factors need not have been considered by the trial court or the state habeas court.  See Barker, 407 U.S. at 530.  Petitioner also has made no showing of actual prejudice from the delay.  Without prejudice, there is no prima facie case of a speedy trial violation.  Id.

Moreover, in denying this claim the superior court properly relied on a prior judicial finding of good cause for the delay.  Petitioner has presented no facts which cast doubt on the

---

[7]  In moving for dismissal on speedy trial grounds, counsel represented that the sixtieth day had been October 16, 2010, and that time had been extended without petitioner's consent on October 8 and again on October 15.  Jury selection began on October 27.  RT 67-69.

1  validity of that finding, and it is entitled to deference here absent a showing that it was objectively

2  unreasonable.

3        For all these reasons, petitioner is not entitled to relief on speedy trial grounds.

4               2.  Denial of Transcripts

5        The superior court did not address petitioner's claim that he was denied copies of

6  transcripts.  Whether this court considers the matter with the deference required under § 2254(d)

7  pursuant to Harrington v. Richter, supra, or under pre-AEDPA standards as a claim unadjudicated

8  by the state court, the result is the same: petitioner did not allege facts stating a prima facie case

9  of a constitutional violation.  The *sine qua non* of a right to transcripts is a need related to retrial

10  or appeal.  Britt v. North Carolina, 404 U.S. at 227; Griffin v. Illinois, 351 U.S. at 17-20.

11  Appellate counsel was appointed for petitioner, and received all necessary transcripts for purposes

12  of appeal.  Petitioner's difficulty in obtaining documents for his own use in state habeas does not

13  violate any clearly established constitutional right.

14               3.  Defense Counsel Conflict of Interest

15        The superior court did not unreasonably apply clearly established federal law in rejecting

16  this claim for lack of a prima facie case.  This was not a situation in which one lawyer was

17  required over objection to simultaneously represent individuals with conflicting interests, as in

18  Holloway v. Arkansas, supra.  Rather, petitioner's lawyer stated that his office would declare a

19  conflict in Marsh's case and cease representing her.  RT 89-90, 275.[8]  Nothing in the record, or in

20  the petition, indicates that this did not happen.[9]  Moreover, petitioner has alleged no facts that

21  would demonstrate the existence of an actual conflict of interest within the meaning of Cuyler v.

22  Sullivan, supra.  Petitioner has identified no way in which his lawyer's performance was

23  _____

[8]  "RT" refers to the Reporter's Transcript on Appeal.

24  [9]  When the issue regarding the Public Defender's representation of Marsh first came to light in
petitioner's case, it appeared that the Public Defender was listed as counsel but that Marsh had

25  never appeared in the matter.  RT 61.  The record does not establish whether or not there was an
actual attorney-client relationship between Marsh and the Public Defender or any Deputy Public

26  Defender at that time.  On October 28, 2010, after the jury for petitioner's trial had been selected

27  but before the presentation of evidence, the public defender had calendared the Marsh matter for
November 1, in order to declare a conflict.  RT 90.  By the time that Marsh testified against

28  petitioner, petitioner's lawyer believed that his office had gotten out of her case.  RT 275.

1   adversely affected – or indeed, impacted in the slightest – by the Public Defenders Office's

2   failure to more promptly identify and cease its simultaneous representation of petitioner and

3   Marsh in unrelated matters.  Because it was not unreasonable of the superior court to reject this

4   claim for lack of a prima facie case, relief is unavailable in this court.

5                      4.  Failure to Accommodate Petitioner's Hearing Impairment

6          Petitioner failed to submit evidence of his hearing impairment to the superior court, and

7   the claim was denied for that reason.  Lodged Docs 6, 7.  Petitioner then submitted the documents

8   comprising Exhibit 4, including medical records, with his habeas petitions to the California Court

9   of Appeal and the California Supreme Court before submitting them to this court.  Lodged Docs.

10  8, 10; ECF No. 1 at 79-92.  The California Court of Appeal denied the petition without comment

11  or citation, Lodged Doc. 9, and the California Supreme Court denied it with citation to various

12  state procedural rules, ECF No. 28.[10]  Whichever state court opinion is reviewed, the result is the

13  same: petitioner failed to present facts stating a prima facie claim of a constitutional violation, so

14  relief was reasonably denied in state court and is unavailable here in any event.

15         No clearly established federal law requires specific accommodations for a hearing-

16  impaired criminal defendant.  Petitioner has not identified any concrete way in which his

17  established rights -- such as the right to consult with counsel, to confront witnesses against him,

18  or to present a defense -- was impaired by his hearing loss.  Petitioner has not identified any

19  portion of the trial that he was unable to hear.  Moreover, as respondent points out, California has

20  specifically provided for the accommodation of hearing-impaired defendants[11] but the record does

21  not reflect any request by petitioner for such accommodation.

22         The record does not reflect that petitioner was unable to participate in the proceedings.  To

23  the contrary, he communicated directly with the judge on several occasions.  Petitioner litigated a

24  motion for new trial in pro se and represented himself at sentencing; the transcripts of these

25  [10]  Respondent has not relied on the order of the California Supreme Court for its procedural
26  default defense.  Accordingly, the court does not address the issue of procedural bar.
    [11]  See Cal. Civ. Code § 54.8 (party who is hearing impaired may request listening
27  aids for court proceedings); Cal. Evid. Code § 754 (interpreters for hearing impaired); People v.
    Freeman, 8 Cal.4th 450, 478 (1994) (trial court should afford deaf party reasonable facilities to
28  accommodate disability).

1    proceedings reflect no communication difficulties.  RT 589-598, 600-625.  Petitioner responded

2    appropriately to questions throughout, and never indicated that that he could not hear what was

3    happening in court.  His statements on the record reflected full awareness of what was being said

4    by the judge and prosecutor.  Nothing in the record suggests any change in the status of

5    petitioner's hearing between the trial and these proceedings immediately following trial.  The

6    claim therefore fails even without the deference required by § 2254(d).  Petitioner is not entitled

7    to relief under any standard, because his allegations do not establish a prima facie claim that any

8    trial right was impaired.

9                            5.  Admission of Improper Evidence

10        The superior court did not unreasonably apply clearly established federal law in rejecting

11   this claim for lack of a prima facie case.  Petitioner's allegations simply fail to rise to the level of

12   a due process violation.  The Supreme Court has never held that due process requires the

13   corroboration of percipient witness testimony with scientific evidence, as petitioner contends.[12]

14   Moreover, the Supreme Court has never "made a clear ruling that admission of irrelevant or

15   prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ."

16   Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009).  Accordingly, the state court cannot

17   have unreasonably applied federal law within the meaning of the AEDPA.  See Wright v. Van

18   Patten, 552 U.S. at 125-26; Moses v. Payne, 543 F.3d at 1098 (9th Cir. 2008).

19        Even under pre-AEDPA standards, the claim fails.  The erroneous admission of evidence

20   warrants habeas relief only when it results in the denial of a fundamentally fair trial in violation of

21   the right to due process.  Estelle v. McGuire, 502 U.S. at 72.  To meet this standard, evidence

22   must both be irrelevant and "of such quality as necessarily prevents a fair trial."  McKinney v.

23   Rees, 993 F.2d 1378, 1380, 1384 (9th Cir.) (quoting Lisenba v. California, supra), cert. denied,

24   510 U.S. 10120 (1993).  "[O]nly if there are no permissible inferences the jury may draw from

25   the evidence can its admission violate due process."  Jammal v. Van de Kamp, 926 F.2d 918, 920

26   _____

     [12]  Nor, contrary to petitioner's argument, do the Federal Rules of Evidence require corroboration
27   of percipient witness testimony with scientific evidence.  Moreover, the Federal Rules of
     Evidence (1) do not apply in state courts and (2) are not define the parameters of constitutional
28   requirements.

                                        18

1   (9th Cir. 1991).  Due process does not generally require the exclusion of evidence subject to

2   challenge for unreliability, which is traditionally a question for the jury.  <u>Perry v. New

3   Hampshire</u>, 132 S.Ct. 716, 728 (2012).

4          This was not a case in which scientific evidence was necessary to the verdict, on the one

5   hand, or could have exonerated the petitioner, on the other.  Petitioner himself testified that there

6   had been a struggle involving scissors, which both of them had handled, and suggested that Marsh

7   had inadvertently been injured during the altercation.  The jury accepted Marsh's testimony that

8   she had been stabbed by petitioner, and rejected petitioner's testimony that he had not stabbed

9   her.  A jury's credibility determination is entitled to near total deference on habeas review.

10  <u>Schlup v. Delo</u>, 513 U.S. 298, 330 (1995).  That testimony was sufficient without more to support

11  the verdict.  In light of the trial record as a whole, neither the admission of the scissors and of

12  testimony regarding the presence of blood on them, nor the absence of DNA evidence to prove

13  the blood was Marsh's or fingerprint evidence to prove petitioner had handled the scissors, can

14  have had any likely effect on the verdict.  <u>See</u> <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637-38

15  (1993) (habeas relief available only where constitutional error has substantial and injurious effect

16  on the verdict).  Accordingly, the superior court was correct that petitioner's allegations fail to

17  state a due process claim.

18         Relief is unavailable on this and all of petitioner's due process claims collected in Ground

19  One of the petition.

20      II.      <u>Claim Two: Ineffective Assistance Of Counsel</u>

21             A.  <u>Petitioner's Allegations</u>

22         Petitioner alleges that he was denied the effective assistance of counsel at trial and on

23  appeal.  ECF No. 1 at 4.

24         Petitioner alleges that trial counsel was ineffective in "failing to investigate the matter at

25  hand"; failing to request DNA testing of the blood drop on the scissors; failing to exclude the

26  scissors and the blood drop from evidence; failure to have the charges dismissed on grounds the

27  victim had been under the influence of methamphetamine at the time of the incident, and/or on

28  grounds the prosecution failed to disclose the victim's arrest for drug possession in the aftermath

of the incident; failure to exclude the victim's testimony on grounds she had been under the influence of methamphetamine at the time of the incident; and failure to call an expert witness to explain the victim's erratic behavior under the influence of drugs.  Petitioner alleges further that his Marsden[13] motions on various of these grounds were wrongly denied by the trial court.  ECF No. 1 at 8-9.

## B.  The Clearly Established Federal Law

To establish a constitutional violation based on ineffective assistance of counsel, a petitioner must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defense.  Strickland v. Washington, 466 U.S. 668, 692, 694 (1984).  Prejudice means that the error actually had an adverse effect on the defense.  There must be a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.  Id. at 693-94.  The court need not address both prongs of the Strickland test if the petitioner's showing is insufficient as to one prong.  Id. at 697.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  Id.

## C.  The State Court's Ruling

Because the superior court issued the only reasoned state court decision on the merits of the claim, that is the decision reviewed for reasonableness under § 2254(d).  See Ylst v. Nunnemaker, 501 U.S. 797 (1991); Bonner v. Carey, 425 F.3d at 1148 n.13.  The superior court ruled in relevant part as follows:

> Ineffective Assistance of Counsel for Failure to Investigate
>
> Petitioner makes vague and conclusory allegations regarding his claim that trial counsel failed to investigate his case, but he has set forth no prima facie case entitling him to relief on these grounds.
>
> Ineffective Assistance of Counsel for Failure to Request DNA Testing
>
> Petitioner submits transcript excerpts and a signed order from the trial court denying a request for DNA testing per PC 1405, but he presents no theory as to why this was ineffective assistance of

---

[13]  People v. Marsden, 2 Cal. 3d 118 (1970).

counsel. PC 1405 involves post conviction DNA testing and Petitioner has not explained how this would implicate the performance of trial counsel.

Ineffective Assistance of Counsel for Failure to File a Suppression Motion

Petitioner has set forth no evidence to show that a failure to file a suppression motion constituted ineffective assistance of trial counsel beyond his own conclusory allegations.

Ineffective Assistance of Counsel for Failure to Call an Expert Witness

Petitioner has set forth no evidence to show that a failure to call an expert witness constituted ineffective assistance of trial counsel beyond his own conclusory allegations.

Ineffective Assistance of Counsel for Failure to File a PC 995 Motion

Petitioner has set forth no evidence to show that a failure to file a PC 995 motion constituted ineffective assistance of trial counsel beyond his own conclusory allegations.

Ineffective Assistance of Counsel for Failure to Insist on Scientific Evidence

Petitioner has set forth no evidence to show that a failure to insist on scientific evidence by the People occurred or that it constituted ineffective assistance of trial counsel beyond his own conclusory allegations.

Ineffective Assistance of Counsel for Failure to Object to Introduction of the Scissors

Petitioner has set forth no evidence to show that there were any grounds for exclusion of the scissors or that a failure to object to the introduction constituted ineffective assistance of trial counsel.

Petitioner has failed to meet his burden in seeking habeas corpus relief by failing to establish a prima facie case as to any of his numerous claims. While he has obtained some documents related to his case and somewhat related to his crimes, his burden involves more than submitting documents. He must set forth coherent legal theories, supported by relevant evidence, that establish his claims for relief. This he has failed to do.

Lodged Doc. 7 at 3-4.

D.  Objective Reasonableness Under § 2254(d)

It was not unreasonable of the superior court to deny the ineffective assistance of counsel

("IAC") claims involving trial counsel for failure to state a prima facie case.  Conclusory

allegations are insufficient to support a collateral attack on a conviction.  <u>James v. Borg</u>, 24 F.3d

20, 26 (9th Cir. 1994) ("[c]onclusory allegations which are not supported by a statement of

specific facts do not warrant habeas relief.").  Petitioner alleged no facts to support the prejudice

prong of <u>Strickland</u>.  He did not specify what evidence would have been discovered by additional

defense investigation, or what an expert witness would have said.  He did not demonstrate that a

suppression motion or a motion under Cal. Penal Code § 995 would have succeeded, or that an

objection to the scissors would have been sustained.  He did not establish that a demand for

scientific evidence from the prosecution would have led to the presentation of exculpatory

evidence.  Indeed, review of the record as a whole compels the conclusion that these would have

been futile acts.  The trial here was a paradigmatic "he said/she said" credibility dispute.  Defense

counsel vigorously cross-examined the complaining witness, and attacked her credibility on

grounds including her drug use.  Nothing in the record suggests that the jury's resolution of the

credibility dispute would have been affected had counsel taken the actions petitioner faults him

for omitting.

> Absent a showing of prejudice from counsel's alleged errors, petitioner cannot prevail.
<u>See</u> <u>Grisby v. Blodgett</u>, 130 F.3d 365, 373 (9th Cir. 1997) ("Speculation about what [a witness]
could have said is not enough to establish prejudice."); <u>Hendricks v. Calderon</u>, 70 F.3d 1032,
1042 (1995) ("Absent an account of what beneficial evidence investigation into any of these
issues would have turned up, [petitioner] cannot meet the prejudice prong of the <u>Strickland</u> test.").
Because petitioner's allegations do not establish a prima facie claim under <u>Strickland</u>, the state
court's denial of relief was both reasonable and correct.  <u>See</u> <u>Strickland</u>, 466 U.S. at 697 (if it is
easiest to dispose of an ineffectiveness claim on the ground of lack of prejudice, that course
should be followed).

> The superior court did not address petitioner's very cursory assertion that appellate
counsel had also rendered ineffective assistance.  Assuming that this claim was also denied on the
merits, it was denied reasonably.  Even without the deference required by AEDPA, the claim
would fail because it is wholly conclusory.  Petitioner has identified no meritorious appellate

1    issues.  His claims of trial error are all meritless for the reasons previously explained, and none

2    would have resulted in success on appeal.  Accordingly, this aspect of the claim also fails for lack

3    of prejudice.  See Smith v. Robbins, 528 U.S. 259, 285-86 (2000) (where petitioner has not

4    identified a meritorious issue for appeal, he cannot state a prima facie case of ineffective

5    assistance on appeal).

6         For these reasons, relief is unavailable on IAC grounds.

7    III.    Claim Three: Admission Of Prior Domestic Violence Incidents and Convictions

8         A.  Petitioner's Allegations and Relevant State Court Record

9         Petitioner contends that his rights to due process and a fair trial were violated by the

10   admission of prior domestic violence evidence under Cal. Code Evid. § 1109,[14] and by instruction

11   of the jury with CALCRIM No. 852.  ECF No. 1 at 10-22.  The record establishes the following.

12        The defense filed a motion in limine to exclude evidence of other domestic violence

13   incidents that the prosecution might seek to introduce pursuant to Cal. Evid. Code § 1109.  CT

14   42-48.  The prosecutor filed a motion in limine to introduce such evidence.  CT 54.  At hearing on

15   the motions, the prosecutor specified that she wanted to introduce: (1) evidence of an April 20,

16   2004, head-butting incident involving petitioner's ex-wife, Daisy Goldsberry; (2) a certified copy

17   of petitioner's battery conviction arising from that incident; (3) evidence of a May 29, 2004

18   threatening phone call to Daisy Goldsberry; (4) evidence that petitioner had in 2005 violated

19   protective orders pertaining to Daisy Goldsberry; (5) a certified copy of petitioner's 2005

20   conviction for violating those protective orders; and (6) a certified copy of petitioner's 2007

21   conviction for criminal threats against Lavina Barnec.  RT 45-48.  The prosecutor proffered Daisy

22   Goldsberry as a witness, but did not intent to call Lavina Barnec.  RT 135-36.

23        The trial court ruled that evidence of the April 20, 2004 head-butting incident was

24   admissible under § 1109, but that evidence of petitioner's resulting conviction was inadmissible

---

25   [14]  Section 1109 provides that, subject to exceptions not at issue here, "in a criminal action in
26   which the defendant is accused of an offense involving domestic violence, evidence of the
     defendant's commission of other domestic violence is not made inadmissible by Section 1101
27   [limiting admission of other acts evidence] if the evidence is not inadmissible pursuant to Section
     352 [permitting exclusion of evidence if its prejudicial effect outweighs its probative value]."  §
28   1109(a)(1).

23

1    unless petitioner testified and denied the conduct.  RT 134-35.  The court excluded evidence of

2    the May 29, 2004 phone call.  RT 135.  Evidence of September 29, 2005 phone calls in violation

3    of a protective order was ruled admissible, but evidence of the resulting conviction was ruled

4    inadmissible unless petitioner testified and denied the conduct.  RT 135.  The court reserved

5    ruling on the Lavina Barnec threat conviction, and stated that it would consider admitting the

6    conviction if there was an evidentiary foundation establishing that petitioner's relationship with

7    Lavina Barnec had been a domestic relationship.  RT 135-36.

8          At trial, during cross-examination of Daisy Goldsberry regarding the head-butting

9    incident, defense counsel questioned the witness about differences in height between herself and

10   petitioner, and whether photographs of her face after the incident supported her testimony

11   regarding her injuries.  RT 195-98.  The court ruled that this line of impeachment opened the door

12   to admission of petitioner's battery conviction, which was entered into evidence.  RT 280.

13         Petitioner testified that he dated Lavina Banec between 2005 and 2007 and that they had

14   lived together.  When asked whether he had been convicted of making criminal threats against

15   her, he responded, "Well, I was convicted, but I'm not guilty."  RT 397.  The court ruled that

16   petitioner's testimony laid a foundation for admission of the conviction, which came into

17   evidence.  RT 429.

18         The jury was subsequently instructed as follows:

19            The People presented evidence that the defendant committed
             domestic violence that was not charged in this case.
20

21            Domestic violence means abuse committed against an adult who is
             a former spouse or former cohabitant or person who dated the
22            defendant.

23            Abuse means intentionally or recklessly causing or attempting to
             cause bodily injury, or placing another person in reasonable fear of
24            imminent serious bodily injury to himself or herself or to someone
             else.

25            You may consider this evidence only if the People have proved by a
             preponderance of the evidence that the defendant in fact committed
26            the uncharged domestic violence. Proof by a preponderance of the
             evidence is a different burden of proof from proof beyond a
27            reasonable doubt. A fact is proved by a preponderance of the
             evidence if you conclude that it is more likely than not that the fact
28            is true.

                                              24

1    If the People have not met this burden of proof, you must disregard
2    this evidence entirely.

3    If you decide that the defendant committed the uncharged domestic
     violence, you may, but are not required to, conclude from that
4    evidence that the defendant was disposed or inclined to commit
     domestic violence and, based on that decision, also conclude that
5    the defendant was likely to commit and did commit the charged
     offense or lesser included offenses. If you conclude that the
6    defendant committed the uncharged domestic violence, that
     conclusion is only one factor to consider along with the other
7    evidence. It is not sufficient by itself to prove that the defendant is
     guilty of the charged offense or lesser included offenses. The
8    People must still prove the charged offense and allegations beyond
     a reasonable doubt.

9    Do not consider this evidence for any other purpose.

10   CT 187.

11            B.   The Clearly Established Federal Law

12           The admission of evidence is generally a matter of state law, and habeas relief does not lie

13   for errors of state law.  Estelle v. McGuire, 502 U.S. at 67.  The erroneous admission of evidence

14   violates due process, and supports habeas relief, only when it results in the denial of a

15   fundamentally fair trial.  Id. at 72.  The Supreme Court has rejected the argument that due process

16   necessarily requires the exclusion of prejudicial or unreliable evidence.  Spencer v. Texas, 385

17   U.S. at 563-564; Perry v. New Hampshire, 132 S.Ct. at 728.

18           Erroneous jury instructions do not support federal habeas relief unless the infirm

19   instruction so infected the entire trial that the resulting conviction violates due process.  Estelle,

20   502 U.S. at 72; Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) ("'[I]t must be established

21   not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but

22   that it violated some [constitutional right]'").  The challenged instruction may not be judged in

23   artificial isolation, but must be considered in the context of the instructions as a whole and the

24   trial record overall.  Estelle, 502 U.S. at 72.  Moreover, relief is only available if there is a

25   reasonable likelihood that the jury has applied the challenged instruction in a way that violates the

26   Constitution.  Id. at 72–73.

27            C.   The State Court's Ruling

28           This claim was exhausted on direct appeal.  Because the California Supreme Court denied

25

discretionary review, the opinion of the California Court of Appeal constitutes the last reasoned decision on the merits and is the subject of habeas review in this court.  See Ylst v. Nunnemaker, 501 U.S. 797; Ortiz v. Yates, 704 F.3d 1026, 1034 (9th Cir. 2012).

The appellate court ruled in pertinent part as follows:

> Defendant contends the court erred by admitting evidence of his prior domestic violence and related convictions. His contention is made up of two arguments.
>
> Defendant's first argument is that Evidence Code section 1109 (the code section under which this evidence was admitted) and CALCRIM No. 852 (the related jury instruction) violated his federal constitutional rights. As defendant recognizes, the California Supreme Court has rejected similar challenges (People v. Reliford (2003) 29 Cal. 4th 1007, 1016; People v. Falsetta (1999) 21 Cal. 4th 903, 907, 910- 922) and we are bound to follow those decisions (Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal. 2d 450, 455).
>
> Defendant's second argument is the court abused its discretion in admitting the evidence because "the similarity of the 2004 incident [involving his ex-wife D.] was too great" and "[a]t the other extreme, [his] criminal threats conviction [involving his ex-girlfriend L.] was a serious felony that had no demonstrated relationship with the instant circumstances." There was no error.
>
> The 2004 incident was relatively recent and no more inflammatory than the current offense. The evidence of the 2004 incident against defendant's ex-wife was that defendant head-butted his ex-wife, injuring her lip and forehead in an argument over money. That there was some similarity between the two, namely, in both cases defendant attacked his partner over a dispute about money did not make it an abuse of discretion to admit the prior act. The enactment of Evidence Code section 1109 eliminated the consideration of the intrinsic prejudice of prior similar acts tending to show a propensity to commit them. (See People v. Soto (1998) 64 Cal.App.4th 966, 984.)
>
> The evidence of the 2007 conviction of criminal threats came in the form of a certified record of defendant's conviction and defendant's testimony that L. was an ex-girlfriend with whom he lived. Contrary to defendant's argument that a "demonstrated relationship" between the prior act and the current act is needed, all that was required to admit the prior act of domestic violence was "evidence of the defendant's commission of other domestic violence" in a current "criminal action in which the defendant is accused of an offense involving domestic violence." (Evid. Code, § 1109. subd. (a)(1).) There was that evidence here: L. was defendant's girlfriend with whom he was living when he "willfully threaten[ed] to commit a crime [against L.] which w[ould] result in death or great bodily injury . . ., with the specific intent that the statement . . . is to be taken as a threat." (Pen. Code, § 422.) No

26

1    more relationship between this act and the one against Marsh was
2    required.

3    Lodged Doc. 3 at 3-5.

4           D.   Objective Unreasonableness Under § 2254(d)

5           The state court's resolution of this issue did not involve an objectively unreasonable

6    application of U.S. Supreme Court precedent.  In Estelle v. McGuire, the Supreme Court

7    expressly left open the question whether a state law permitting the introduction of propensity

8    evidence would violate due process.  See Estelle, 502 U.S. at 75 n.5.  The Court has never

9    answered that question.  Accordingly, a state court's decision rejecting petitioner's due process

10   challenge to Cal. Code Evid. § 1109 cannot have been contrary to, or an unreasonable application

11   of, clearly established federal law.  See Alberni v. McDaniel, 458 F.3d 860, 866 (9th Cir. 2006)

12   (habeas petitioner's argument that use of propensity evidence violated his right to due process

13   fails to meet the AEDPA threshold), cert. denied, 549 U.S. 1287 (2007).  Furthermore, the Ninth

14   Circuit has upheld the constitutionality of an analogous Federal Rule permitting the introduction

15   of propensity evidence.  See United States v. LeMay, 260 F.3d 1018, 1025-26, 1030-31 (9th Cir.

16   2001) (rejecting due process and equal protection challenges to Fed. R. Evid. 414), cert. denied,

17   534 U.S. 1166 (2002).  State court precedent reaching the same result as the Ninth Circuit's,

18   based on the same reasoning, cannot be deemed objectively unreasonable.

19          On appeal, petitioner's due process argument was based on a pre-AEDPA Ninth Circuit

20   case, McKinney v. Rees, 993 F.2d 1378, 1380, 1384 (9th Cir.), cert. denied, 510 U.S. 10120

21   (1993),[15] which held that due process was violated by admission of evidence that the petitioner

22   possessed knives unrelated to the charged homicide, in which the victim's throat was slit.  That

23   evidence was both wholly irrelevant to the charges and unduly inflammatory.  McKinney, 993

24   F.2d at 1385 (evidence "was not relevant to the questions before the jury" and "served only to

25   prey on the emotions of the jury").  Because this court's review in this case is constrained by §

26   2254(d), Ninth Circuit precedent regarding the constitutionality of propensity evidence cannot

27   support relief.  See Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) (denying relief

28   ---
     [15]   See Lodged Doc. 1 at 19-22.

1   under § 2254(d), for lack of clearly established Supreme Court precedent, on claim that

2   prejudicial evidence denied due process).

3          Petitioner's challenge to the related jury instruction also fails.  There is no reasonable

4   likelihood that the jury applied the challenged instruction in a way that violated petitioner's

5   rights.  Consideration of the prior instances of domestic violence was not unconstitutional,

6   according to clearly established federal law, for the reasons already explained.  The jury

7   instructions as a whole made clear that petitioner could be convicted only on the basis of proof

8   beyond a reasonable doubt that he had assaulted Marsh.  In light of the evidence regarding

9   petitioner's interactions with Marsh, it is unlikely that the challenged instruction had any

10  appreciable effect on the verdict.

11         For all these reasons, this court may not disturb the state court's adjudication of these

12  issues.

13                                      CONCLUSION

14         For all the reasons explained above, the state courts' denial of petitioner's claims was not

15  objectively unreasonable within the meaning of 28 U.S.C. § 2254(d).  Even without reference to

16  AEDPA standards, petitioner has not established any violation of his constitutional rights.

17  Accordingly, IT IS HEREBY ORDERED that:

18         1.   The petition for writ of habeas corpus is DENIED;

19         2.   The court declines to issue the certificate of appealability referenced in 28 U.S.C. §

20              2253.

21  DATED: June 8, 2015

22                                      _____

23                                      ALLISON CLAIRE
                                        UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28

                                           28